IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 06-067-SLR |
| | ) | |
| TERRANCE SIRMANS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

**I.   INTRODUCTION**

Defendant Terrance Sirmans moves to suppress evidence seized during a search conducted on December 23, 2005.[1] (D.I. 16) Plaintiff has filed a response. (D.I. 20) An evidentiary hearing was held on October 12, 2006. (D.I. 22) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion to suppress will be denied.

**II.  FINDINGS OF FACTS**

Pursuant to Federal Rule of Criminal Procedure 12(d), the following constitutes the court's essential findings of fact.

1.   In the fall of 2005, Mark Herron,[2] a senior probation

---

[1] Defendant was charged as a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). (D.I. 2)

[2] At the time, Herron was responsible for locating probationers who abandoned supervision and were wanted for probation violations. (Id. at 4) Herron was the only witness presented.

officer employed by the Delaware Probation and Parole Office, was contacted by the United States Marshals fugitive task force for information regarding defendant's address.  (D.I. 22 at 5) Herron was advised that defendant was wanted on a Delaware State Police warrant for robbery and a gun-related offense.  (Id. at 5)

2.   After searching State databases and records, Herron discovered that defendant might be located at 25 South Cannon Drive ("the address") and found that defendant was wanted for a probation violation.  (Id. at 5-6; 7-8)

3.   On several occasions, Herron conducted surveillance at the address.  (Id. at 7-9; D.I. 23, GX1)  He observed a 1990 Crown Victoria parked near the address and concluded that defendant was driving this vehicle.  (Id.)

4.   From approximately December 20-22, 2005, Herron did not observe the Crown Victoria at the address.  (Id. at 9)  On December 23, 2005, Herron saw the Crown Victoria at the address and advised task force members.  They decided to apply for a warrant to search 25 South Cannon Drive and the Crown Victoria.

5.   Herron returned to his office to prepare the warrant. (Id. at 10)  He tried to use a standard warrant template ("MACRO") saved into his computer files, but the MACRO was not working correctly.  Herron had longstanding problems in using this MACRO due to a glitch in the system.  (Id. at 19)  As a result, Herron used a "previously developed search warrant" file

by deleting specific information regarding another individual[3] and inserting specific information regarding defendant. (Id. at 11; 19-20)

    6.   Herron deleted all of Henderson's information and inserted defendant's information in the body of the warrant. (Id. at 12) Specifically, he inserted defendant's: (1) date of birth; (2) SBI number; (3) property location; and (4) vehicle identification and VIN number. (Id. at 11) Herron also changed the items to be searched to specify defendant, firearms, ammunition and any documentation related to defendant's ownership or purchase of a firearm.

    7.   In the greeting section of the warrant, however, Herron forgot to insert defendant's information. (Id. at 12) Specifically, the section provides:

> Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied that there is probable cause to believe that certain property, namely the body of *Curtis Henderson*, and any documents used to falsely identify *Mr. Henderson*, which is used or intended to be used for the crimes of Fugitive from Justice - MD - violation of Probation- PWI to DEL drugs . . . .

(GX1 at 6)(emphasis added) A subsequent sentence references the affidavit and the application in support of the warrant. (Id.)

---

[3]Curtis Henderson.

8. In the supporting probable cause affidavit,[4] Herron explained that defendant was an armed robbery suspect against whom an arrest warrant had been issued. (GX1 at 2) Defendant's get-away vehicle was described as a maroon or red, older-model Ford Ltd. Notes from a May 5, 2003 probation visit indicated that defendant had a sister who resided at 25 Edgemoore Gardens and 25 South Cannon is part of Edgemoore Gardens. Notes from a July, 2005 probation office visit reflected defendant's intention to move in with his sister, Vameika Cephas. During an October 2005 home visit, defendant's wife told probation officers that defendant was residing with his sister and provided her phone number. Cephas had a red Ford Crown Victoria and 1998 Chevrolet registered under her name. Defendant had received a traffic ticket while driving a red Ford Crown Victoria. On several occasions, Herron observed the Crown Victoria parked near the address. From his seventeen years of experience as a probation/parole officer, Herron averred that "wanted felons sometimes park a vehicle a short distance from a residence instead of in the driveway or in front of the residence" in order to conceal their location from law enforcement. (Id. at 3 at ¶6)

---

[4]Although the affidavit and warrant were introduced into evidence, Herron did not testify as to the information contained therein because the parties had previously agreed that the court's review of whether there was probable cause to issue the warrant was limited to the document itself. (D.I. 20 at fn.1; D.I. 22)

These observations led Herron to conclude that Cephas regularly drove the Chevrolet and not the Crown Victoria. (Id. at 3) Herron traced the paper license plate posted on the Crown Victoria to a vehicle registered to defendant's mother.

9.   Herron completed the warrant application and affidavit in about 40 minutes. (D.I. 22 at 13) Herron did not check whether the changes he entered were reflected in the final version. (Id. at 12-13) Herron believed the warrant and affidavit were true and correct.

10.   Herron presented the warrant and affidavit to a State justice of the peace. (Id. at 13-14) Herron was called into the courtroom and swore to the veracity of the documents. (Id. at 14) No one noticed that defendant's name did not appear in the greeting section.

11.   Herron met six other officers at the address. None of the officers reviewed the warrant nor were aware of the mistake. (Id. at 15) At approximately 1:00 p.m., the officers executed the warrant and found defendant at the residence. (Id. at 14, 21) They also discovered a loaded firearm in the laundry room. (Id. at 16-17)

12.   Approximately one month after the warrant had been executed, Herron reviewed the warrant and realized the mistake. (Id. at 15-16)

**III. DISCUSSION**

In his motion, defendant asserts that the search warrant is defective because it authorizes a search for an individual identified as "Curtis Henderson" a "fugitive from justice - Maryland violation of probation." (D.I. 16; D.I. 22 at 25) This is not a mere technical error, argues defendant, but goes directly to the purpose of the warrant. He also argues that Herron did not have probable cause to believe that defendant was associated with the address.[5]

Plaintiff contends that Herron's affidavit provided a substantial basis for the justice of the peace's probable cause determination. (D.I. 20) Further, the inadvertent reference to Henderson rather than defendant does not render the search warrant defective because the affidavit and application accompanying the affidavit clearly evince that the search was for defendant and not Henderson.

## IV. STANDARD OF REVIEW

### A. Probable Cause

The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [O]ath or

---

[5]The parties have agreed that this challenge may be resolved by reviewing Herron's affidavit. (D.I. 20 at fn.1; D.I. 22)

6

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The threshold requirement for issuance of a warrant is probable cause. Illinois v. Gates, 462 U.S. 214, 236 (1983).

After a search warrant has been issued and is challenged on the basis of probable cause, the reviewing court must determine whether the judicial officer had a substantial basis for finding probable cause. United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001). The judicial officer's determination of probable cause is afforded great deference. United States v. Ninety-Two Thousand Four Hundred Twenty-Five Dollars and Fifty-Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002).

The reviewing court should avoid "interpreting affidavit[s] in a hyper-technical, rather than commonsense manner." United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993). In so doing, the court should confine itself to the facts before the judicial officer and not consider information from other portions of the record. United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001). Close calls should be resolved in favor of upholding the warrant. Jones, 994 F.2d at 1055.

Considering this authority against the affidavit at bar, there was a substantial basis for the justice of the peace to conclude that probable cause existed to issue the warrant. Specifically, Herron's conclusions were based on information

gleaned from his careful review of probation records which he verified through other law enforcement and motor vehicle databases, as well as his personal observations of the residence and the area. There was nothing presented to suggest these statements were unreliable or unsubstantiated.

**B.   Mistakes in the Search Warrant**

The Fourth Amendment mandates that an issued warrant specifically describe the person or things to be searched and seized. United States v. Doe, 703 F.2d 745 (3d Cir. 1983). "Fed. R. Crim. P. 4(c)(1) provides that a warrant 'shall contain the name of the defendant or, if his name is unknown, any name or description by which he can be described with reasonable certainty,' and this Rule has been read as a gloss on the fourth amendment." Id. at 747. (citation omitted). The warrant must contain either on its face or by attachment a particular description of what is to be seized. Batholomew v. Commonwealth of PA, 221 F.3d 425, 429 (3d Cir. 2000). The "requirement of particularity has been described as a question of practical rather than technical accuracy." United States v. Dollson, 2004 WL 2577551 at *3 (E.D. Pa. Oct. 24, 2004). To that end, clerical errors will not automatically render a warrant defective. United State v. Carter, 756 F.2d 310, 313 (3d Cir. 1995). The crucial issue is "whether there has been such a variance as to 'affect

the substantial rights' of the accused." Id., citing Cromer v. United States, 142 F.2d 697 (D.C. Cir. 1944)).

The court finds Herron's uncontradicted testimony credible and his explanation for the mistake reasonable. Considering the affidavit in conjunction with the warrant, it is evident that Herron was referencing defendant and that the inclusion of Henderson's information was an inadvertent error that does not impinge defendant's substantive rights.

**VI. CONCLUSION**

IT IS ORDERED this 14th day of November, 2006, that:

1. Defendant's motion to suppress (D.I. 16) is denied.

2. The court will initiate and conduct a telephonic status conference on **Thursday, November 30, 2006** at **9:00 a.m.**

3. The time between this order and the teleconference shall be excluded under the Speedy Trial Act in the interests of justice. 18 U.S.C. § 3161(h)(8)(A).

_____
United States District Judge