

**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

---

*Nemours Building*                                    *(302) 573-6277*
*1007 Orange Street, Suite 700*                 *FAX (302) 573-6220*
*P.O. Box 2046*
*Wilmington, Delaware 19899-2046*

January 24, 2007

Honorable Sue L. Robinson
Chief Judge
United States District Court
J. Caleb Boggs Federal Building
844 King Street
Wilmington, Delaware   19801

      Re:   **U.S. v. Sirmans,   Crim # 06-67-SLR**

Dear Chief Judge Robinson:

      If the defendant testifies at trial the United States will seek to impeach him with prior adult convictions, pursuant to Fed R. Evid 609(a)(1) and (2).  The defendant's relevant convictions are as follows:

6-16-03 Possession, Manufacture of Fictitious Proof of Insurance (Misdemeanor - JP Court #20)

4-9-01 Possession of Deadly Weapon (Firearm)by Person Prohibited
4-9-01 Receiving Stolen Property-Over $1000. (Both felonies - NCC Superior Court)

      The United States cites *United States v. Sanders*, 2006 WL 3531462 (E.D. Pa. Nov. 30, 2006), which summarizes the case law of the Third Circuit;  *United States v. Murphy*, No. 05-1501, 2006 U.S.App. Lexis 7827 (3d Cir. March. 30, 3006); *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992)( "There is no question that, given a proper purpose, [such as impeachment under Rule 609(a)(1),] drug convictions are admissible in a trial where the defendant is charged with a drug offense.");  and *United States v. Jacobs*, 44 F.3d 1219, 1224, n. 6 (3d Cir 1995)("Case law firmly establishes that it is proper to admit evidence of the type of felony involved in a prior conviction used for impeachment under Fed. R. Evid. 609(a)(1).") Copies of these 4 cases are attached.

      Also enclosed is a proposed jury instruction.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: _____
Edmond Falgowski
Assistant United States Attorney

pc:    James Haley, Esquire (by fax)
       Clerk, U.S. District Court (w/o enclosures)

## IMPEACHMENT OF
## DEFENDANT BY PRIOR CONVICTION

You have heard that before this trial the defendant was convicted of a crime.

This earlier conviction was brought to your attention only as one way of helping you decide how believable his testimony was. You cannot use it for any other purpose. It is not evidence that he is guilty of the crime that he is on trial for now.

Pattern Criminal Jury Instructions, District of Delaware, § 7.6 (citations omitted).

24

Slip Copy
Slip Copy, 2006 WL 3531462 (E.D.Pa.)
(Cite as: 2006 WL 3531462 (E.D.Pa.))

**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
UNITED STATES of America
v.
Stanley SANDERS.
Criminal No. 06-173.

Nov. 30, 2006.

David M. Kozlow, Federal Defenders, Philadelphia, PA, for Stanley Sanders.

Christopher R. Hall, Assistant U.S. Attorney, Philadelphia, PA, for United States of America.

*MEMORANDUM AND ORDER*

GENE E.K. PRATTER, J.

I. *INTRODUCTION*

*\*1* Stanley Sanders is charged with two counts of bank robbery in violation of 18 U.S.C. § 2113(a). Mr. Sanders has three prior state felony convictions, [FN1] and there is no dispute that these convictions (or his release from imprisonment) on all three convictions occurred less than ten years ago. Mr. Sanders's jury trial is scheduled to commence on December 5, 2006. The defense has filed a motion *in limine* pursuant to Federal Rule of Evidence 609 to preclude introduction at trial of evidence of Mr. Sanders's prior convictions. The Government opposes the motion, but states that it intends only to use evidence of Mr. Sanders's criminal convictions record for cross-examination purposes in the event Mr. Sanders testifies at his upcoming trial.

> FN1. In 2003 Mr. Sanders was convicted of and imprisoned for felony theft by receiving stolen property and unauthorized use of a vehicle; in 1996 he was found to be guilty of felony retail theft and imprisoned in 2001 for violating his probation for this crime; and in 1996, Mr. Sanders was again convicted of a separate felony retail theft.

In light of the nature of the charges to be tried, the Government's proposed limited use for such evidence and the results of weighing the four factors delineated by the Third Circuit Court of Appeals for evaluating such proposed evidence under Rule 609, the Court denies the Motion *In Limine* and will permit introduction at trial of the evidence of Mr. Sanders's prior conviction(s) under the conditions set forth in this Memorandum and the accompanying Order, subject to the Court's subsequent determination following a hearing immediately prior to the start of the trial as to which conviction(s) may be used for this purpose and what may be said about such conviction(s) at the time of the proposed use.

II. *DISCUSSION*

Federal Rule of Evidence 609(a)(1) provides, in relevant part, that:

> For the purpose of attacking the credibility of a witness, ... evidence that an accused has been convicted of [a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused....

Fed.R.Evid. 609(a)(1). Our Court of Appeals has held that "Rule 609 is premised on 'the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.' " *Walden v. Georgia Pacific Corp.,* 126 F.3d 506, 523 (3d Cir.1997) (citation omitted), *cert. denied,* 523 U.S. 1074 (1998). Thus, "Rule 609 evidence is admitted to inform the jury about the character of witnesses whose testimony the jury is asked to believe." *Id.* (citation omitted). A defendant who elects to testify at trial places his credibility directly at issue. *United States v. Murphy,* No. 05-1501, 2006 U.S.App. LEXIS 7827, at *5 (3d Cir. Mar. 30, 2006); *United States v. Beros,* 833 F.2d 455, 463-64 (3d Cir.1987). Indeed, the Court of Appeals has reiterated that it has "held that 'there is no question that, given a proper purpose, [such as impeachment under Rule 609(a)(1) ], [even] drug convictions are admissible [even] in a trial where the defendant is charged with a drug offense.' " *Murphy,* 2006 U.S.App. LEXIS 7827, at *5 (citation omitted). Accordingly, this Court commences consideration of Mr. Sanders's motion with the recognition that case law "firmly establishes that it is proper to admit evidence of the type of **felony** involved in a prior conviction used for **impeachment** under Fed.R.Evid. 609(a)(1)." *United*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*States v. Jacobs,* 44 F.3d 1219, 1224 n. 6 (3d Cir.1995), *cert. denied,* 514 U.S. 1101 (1995).

**\*2** However, admissibility is by no means a foregone conclusion. The Court of Appeals has enumerated four factors that the trial court should weigh in making a Rule 609(a)(1) determination: (1) the kind of crime involved; (2) when the prior conviction occurred; (3) the importance of the witness's testimony; and (4) the importance of the credibility of the defendant. *Gov't of the Virgin Islands v. Bedford,* 671 F.2d 758, 761 n. 4 (3d Cir.1982). Here, Mr. Sanders has two prior retail theft convictions from 1996, and a conviction in 2003 for receiving stolen property and unauthorized use of a vehicle. As the cases cited above hold, it is appropriate to view felony convictions as probative of Mr. Sanders's credibility. Indeed, even the probative value of earlier drug convictions has been found to be sufficient in the face of countervailing potential prejudice where the defendant is on trial for narcotics charges. *See e.g., United States v. Cordoba,* 104 F.3d 225, 229 (9th Cir.1997); *United States v. Borrome,* No. 97-224, 1997 WL 786436, at \*3 (E.D.Pa. Dec. 3, 1997), *aff'd,* 166 F.3d 1206 (3d Cir.1998).

With respect to the factors that focus on qualitative considerations, if Mr. Sanders testifies at trial, his testimony--like that of all defendants who make this decidedly serious and fundamental voluntary choice--will be important, and his credibility instantly will become a central issue at trial. What Mr. Sanders has to say in the face of what the witnesses to be called by the Government will testify is certain to capture the attention of the jury, and the jury deserves to have as complete a picture of the believability of Mr. Sanders as can be gained under the circumstances. *See e.g., United States v. Rosato,* No. 98-343, 1999 WL 58577, at \*3 (E.D.Pa. Jan. 26, 1999). *See also Walden v. Georgia Pacific Corp.,* 126 F.3d 506, 523 (3d Cir.1997). Those circumstances quite properly include evidence of one, or possibly more, of Mr. Sanders's prior felony convictions, lest the jury be under the wholly erroneous impression that Mr. Sanders's credibility is unassailable by any recognized undermining element such as an earlier felony conviction.

The Court is not unmindful that Mr. Sanders is concerned that the potential prejudice to him will be great if evidence of even one of his prior convictions

is disclosed at trial. Nothing uniquely inflammatory or unduly prejudicial about any of his prior convictions, however, has been brought to the Court's attention. Prejudice sufficient to override the legitimacy of using such evidence to impeach a testifying defendant must be something demonstrably more than the understandable discomfiture a defendant experiences with the concept of the jury knowing this kind of background detail about the defendant's past. As the Government points out, Mr. Sanders's prior convictions are dissimilar from the charges for which he is on trial now. Therefore, there is no inherent danger that the jury will draw an improper inference of guilt from the impeachment use of the prior conviction evidence here as there might be if the prior convictions had involved bank robberies.

**\*3** In order to further guard against what would be legally recognized as prejudicial, i.e., the jury's substantive use of the prior conviction(s) for some purpose other than to evaluate Mr. Sanders's credibility, the Court will instruct the jury, both in advance of the introduction of the evidence and in the final charge, as to the limited permitted use of such evidence. [FN2] In order to further reduce the risk of prejudice to the Defendant, the Court is also prepared to address during a hearing immediately prior to trial the questions of whether the Government will be limited at trial to using less than all three of the subject prior convictions and what specific information may be used regarding such conviction(s). [FN3]

> FN2. Juries are expected and presumed to adhere to such instructions. *Richardson v. Marsh,* 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process."); *United States v. Urban,* 404 F.3d 754, 776 (3d Cir.2005) ("We presume that the jury follows such instructions...."); *United States v. Newby,* 11 F.3d 1143, 1147 (3d Cir.1993) ("[W]e presume that the jury will follow a curative instruction unless there is an 'overwhelming probability' that the jury will be unable to follow it and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant.") (citations omitted), *cert. denied, Barber v. United States,* 511 U.S. 1087 (1994); *Newby v. United States,* 513 U.S. 834 (1994). The Court specifically encourages counsel for Mr. Sanders to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

propose an appropriate instruction if defense counsel objects to the language of the instruction proposed by the Government in its Memorandum. ( *See* Government Mem. 10 n. 8.)

FN3. Although the Court has broad discretion as to the timing of the ruling relating to admissibility of a defendant's prior convictions, *Diggs v. Lyons,* 741 F.2d 577, 579-582 (3d Cir.1984), *cert. denied,* 471 U.S. 1078 (1985), it also is aware of the desirability of making such a ruling in advance of trial if feasible so that the Defendant can make an informed decision as to whether to testify. For this reason, the Court declines to follow the Government's suggestion that a ruling could follow the Defendant's direct testimony. *See Luce v. United States,* 469 U.S. 38, 41-42 (1984). In the Court's view, where it is feasible to do so, it is a mark of fairness to provide a defendant with a meaningful opportunity to weigh the competing considerations and to have a sufficient opportunity to consult with counsel in order to have the benefit of counsel's dispassionate professional judgment. In addition, the Court believes that a pretrial decision will maximize the opportunity for all counsel to present appropriate opening statements to the jury that may anticipate the particular issue, if counsel so chooses to make reference to it.

## III. *CONCLUSION*

For all the foregoing reasons, the Court finds that, if Mr. Sanders testifies, the Government may introduce in cross-examination the fact, date and

specific nature of Mr. Sanders's prior conviction(s), the specific one or ones of such convictions to be determined immediately prior to the start of trial.

An appropriate Order consistent with this Memorandum follows.

### *ORDER*

AND NOW, this 30th day of November, 2006, upon consideration of Defendant Stanley Sanders's Motion to *In Limine* to Preclude Evidence of Prior Convictions (Docket No. 48) and the Government's Response thereto (Docket No. 51), it is hereby ORDERED that the Motion is DENIED to the extent that, if Defendant Sanders testifies, the Government may introduce in cross-examination the fact, date and specific nature of one or more of Defendant Sanders's prior convictions, with the determination of which such prior conviction(s) may be so used to be made following a hearing to be held immediately prior to trial. The Court will instruct the jury, both in advance of the introduction of the evidence and in the final charge, as to the limited permitted use of such evidence.

Slip Copy, 2006 WL 3531462 (E.D.Pa.)

Motions, Pleadings and Filings (Back to top)

. 2:06cr00173 (Docket) (Apr. 12, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

172 Fed.Appx. 461
172 Fed.Appx. 461
**(Cite as: 172 Fed.Appx. 461)**
**C**

Page 1

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.
UNITED STATES of America
v.
Kareem **MURPHY**, Appellant.
No. 05-1501.

Submitted Under Third Circuit LAR 34.1(a) March 10, 2006.
Decided March 30, 2006.

**Background:** Defendant was convicted in the United States District Court for the Eastern District of Pennsylvania, William H. Yohn, Jr., J., of being a felon in possession of a firearm. Defendant appealed.

**Holding:** The Court of Appeals, Rodriguez, District Judge, held that admission of defendant's prior felony drug convictions was proper, as impeachment evidence.

Affirmed.

West Headnotes

Witnesses ☞337(21)
410k337(21)

Admission of defendant's prior felony drug convictions was proper, as impeachment evidence, in prosecution for being a felon in possession of a firearm; defendant chose to testify at trial, thereby placing his credibility directly at issue, and trial court gave jury limiting instruction. Fed.Rules Evid.Rule 609, 28 U.S.C.A.

**\*461** Appeal from Judgment in a Criminal Case Entered in the United States District Court for the Eastern District of Pennsylvania, at Criminal No.

03-cr-00461-1. The Honorable William H. Yohn, Jr., District Judge.

Before ROTH and ALDISERT, Circuit Judges, and RODRIGUEZ, [FN*] District Judge.

> FN* The Honorable Joseph H. Rodriguez, Senior District Judge, United States District Court for the District of New Jersey, sitting by designation.

OPINION OF THE COURT

RODRIGUEZ, District Judge.

Kareem Murphy appeals his conviction for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal, Murphy argues that the District Court, in admitting evidence of his prior convictions, abused its discretion because it failed to properly consider and analyze the factors relevant to Fed.R.Evid. 609. We have jurisdiction to review final decisions of the district courts pursuant to 28 U.S.C. § 1291. We will affirm.

I.

Because we write solely for the parties, we will only mention those facts relevant to our analysis. On April 16, 2003, Murphy was standing at the corner of Taylor and Dickinson streets in Philadelphia, Pennsylvania. On-duty Philadelphia Police Officers Shawn Rinier, Eric Nelson and John Tocco recognized Murphy and knew that he was wanted on two outstanding warrants. When Officers Nelson and **\*462** Tocco exited their vehicle to apprehend Murphy, he ran from the scene. The government alleges that as Murphy was running, a gun dropped from his pants. While Officer Tocco pursued Murphy, eventually apprehending him, Officer Nelson stopped to recover the gun.

On July 29, 2003, a one-count indictment was issued, charging Murphy with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). At the time of indictment, Murphy had been convicted of two separate drug offenses; one relating to conduct in 1999 and one relating to conduct in 2000. In addition, during the pendency of this action, Murphy pleaded guilty to a third drug offense in 2003.

Because there was a possibility that Murphy would

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

testify at trial, his counsel filed a Motion in Limine to preclude the introduction of his prior convictions under Rule 609. After oral argument, the District Court denied the motion. At trial, Murphy testified, was confronted with the convictions and was convicted. This appeal followed.

## II.

We "review a district court's decision to admit evidence for abuse of discretion." *United States v. Johnson,* 388 F.3d 96, 100 (3d Cir.2004). A district court's decision cannot be reversed "merely because we, as members of a reviewing court, possess a different view concerning the probative value or prejudicial effect of the challenged evidence." *United States v. Universal Rehab. Servs., Inc.,* 205 F.3d 657, 665 (3d Cir.2000) (en banc) (quoting *United States v. Long,* 574 F.2d 761, 767 (3d Cir.1978)). We have said that great deference should be given to a district court's decision regarding the admissibility of evidence, and "[i]f judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *Id.* (quoting *Long,* 574 F.2d at 767.) Moreover, reversal is only justified when a district court's analysis and resulting conclusion is either "arbitrary or irrational." *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.,* 113 F.3d 444, 453 (3d Cir.1997)).

## III.

Murphy contends that because the District Court allowed the government to impeach him with specific facts of his prior felonies, rather than simply that he had previously been convicted of one unspecified felony, it abused its discretion. We disagree. First, the District Court engaged in the appropriate analysis under Rule 609. Second, the District Court provided the jury with a limiting instruction regarding the proper purpose of prior conviction evidence.

Rule 609 states, in pertinent part, that:
[f]or the purpose of attacking the credibility of a witness, ... evidence that an accused has been convicted of [a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial value to the accused....
Fed.R.Evid. 609(a)(1) (1990). "Rule 609 is premised on 'the common sense proposition that one who has transgressed society's norms by committing

a felony is less likely than most to be deterred from lying under oath.' " *Walden v. Georgia Pac. Corp.,* 126 F.3d 506, 523 (3d Cir.1997) (quoting *Cummings v. Malone,* 995 F.2d 817, 826 (8th Cir.1993)) (further citation omitted). "Rule 609 evidence is admitted in order to inform the jury about the character of the witnesses whose testimony the jury is asked to believe." *Id.* (citing *United States v. Martinez,* 555 F.2d 1273, 1275 (5th Cir.1977).

When a defendant chooses to testify at his trial he places his credibility "directly **\*463** at issue." *United States v. Beros,* 833 F.2d 455, 463-64 (3d Cir.1987). We have held that "[t]here is no question that, given a proper purpose, [such as impeachment under Rule 609(a)(1),] drug convictions are admissible in a trial where the defendant is charged with a drug offense." *United States v. Sampson,* 980 F.2d 883, 887 (3d Cir.1992). [FN\*\*] Indeed, other Circuit Courts have also held that prior drug convictions in particular have probative value for impeachment purposes. *See, e.g., United States v. Cordoba,* 104 F.3d 225, 229 (9th Cir.1997) (holding that a prior conviction for possession with intent to distribute cocaine is admissible under Rule 609); *United States v. Hernandez,* 106 F.3d 737, 739-40 (7th Cir.1997) (holding that prior convictions for possession of cocaine and marijuana are admissible to impeach defendant).

> FN\*\* Although Murphy never cites Rule 404(b) in his brief, he argues that when the prior offense and the charged offense are similar, there is a "likelihood that knowledge of the prior offense will lead the jury to make the type of propensity inference that is forbidden under the law," which is exactly the issue that Rule 404(b) addresses. (Petitioner's Brief, p. 22.) However, this argument is unavailing for two reasons. First, Murphy's prior drug convictions and the charged offense of felon in possession of a firearm are not sufficiently similar to invoke the concerns of Rule 404(b). Second, and more importantly, the concerns of Rule 404(b) can give way to Rule 609(a)(1), even when both the prior conviction and the charged offense are drug-related. *See United States v. Hernandez,* 106 F.3d 737, 739 (7th Cir.1997) (holding that the district court acted within its discretion when it determined that the importance of credibility outweighed the caution required under Rule 404(b) where both the prior conviction and the current charge involved drug-related offenses).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

We have enumerated four factors that the district court should consider in making this determination: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony; [and] (4) the importance of the credibility of the defendant." *Gov't of Virgin Islands v. Bedford,* 671 F.2d 758, 761 n. 4 (3d Cir.1982) (citing Symposium, "The Federal Rules of Evidence," 71 NW. U.L.REV. 634, 661-64 (1977)).

## IV.

In the instant case, the District Court was cognizant of the four-factor analysis dictated by our precedent. The record indicates that the District Court duly considered the four factors:

THE COURT: All right. Well, with reference to the case law, case law in the Third Circuit on this issue is fairly sparse. But the Third Circuit has set forth the five factors, that are set forth in the defendant's motion in limine, as things that should be considered. The first is the nature of the crime. And in that regard, the drug convictions are, of course, felonies. And felonies, under the Federal rules, do have impeachment value, and has been pointed out by Ms. Fisk.

The Third Circuit--or the Second Circuit--has stated, accurately, that a narcotics trafficker lives a life of secrecy and dissembling, in the course of the activity; being prepared to say whatever is required by the demands of the moment, whether the truth or a lie. From this, he could rationally conclude that such activity in a witness's past is probative, on the issue of credibility.

So I think it's quite clear that in terms of the nature of the crime, that although it's not a *crimen falsi,* that is treated separately in 609. And obviously, 609(1), as opposed to 609(2), relates to crimes that do not involve dishonesty or false statement. So being a felony and being one that does involve a great deal of secrecy and lying, it seems to me that *464 the first factor weighs in favor of admitting the evidence.

The second factor is the--when the convictions occurred. And all of them are quite recent. And therefore, it would seem to me that that factor also weighs in favor of admitting the evidence of the crimes; since the more recent the conviction is, the more likely it is--it affects his credibility.

The third factor is the importance of the witness's testimony in the case. And in this case, the testimony of the defendant, obviously, would be very significant in connection with this. But it has

been pointed out, the Government had two police officers who testified that they saw the gun--well, one saw the gun drop. And the other heard the gun hit the concrete. Apparently, the defendant has two witnesses who will say they did not see a gun fall from him. So that balances out, somewhat, the necessity for his testimony. But I think, on balance, that factor is evenly balanced.

The next factor is the importance of the credibility of the defendant. And in this case, of course--if the defendant testifies--his credibility is very important. And therefore, the Government's request to use this information to attack his credibility is equally important. So it seems to me that that factor is also either balanced, or slightly in favor of admission.

And finally, the--generally, the impeachment value of the prior crime. And I have mentioned that previously. And it does have impeachment value. So, that factor would weigh in favor of admission. And finally, it seems to me that any prejudicial fact--any prejudicial inference, because of a prior conviction--is lessened, by the fact that the jury already knows that he has been convicted of a felony, because of either stipulation or evidence of a prior felony, which is one of the elements of the crime charged. So they already have that in front of them, regardless of this evidence. And therefore, any prejudice to him is lessened, in that regard.

So considering all of those things, I find that the evidence is admissible under 609(a)(1), in that the probative value of admitting the evidence outweighs its prejudicial effect to the accused.

\* \* \* \* \* \*

So the motion in limine, then, is denied.
(Trial Transcript, app. at 187-90.)

Accordingly, after considering the four factors we have enumerated, the District Court found that Murphy's prior convictions were admissible pursuant to Rule 609. Moreover, the District Court gave the jury a limiting instruction both at the time of introduction and during the final charge. (Trial Transcript, app. at 250-51, 288.) We therefore conclude that the District Court did not abuse its discretion in admitting Murphy's prior convictions.

## V.

We have considered Murphy's additional argument that the District Court failed to consider the prior

172 Fed.Appx. 461
**(Cite as: 172 Fed.Appx. 461, \*464)**

offenses seriatim and conclude that no further discussion is necessary.    Accordingly, we will affirm the conviction of the District Court.

172 Fed.Appx. 461

Briefs and Other Related Documents (Back to top)

. 05-1501 (Docket) (Feb. 22, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

forcement authorities and where necessary for such an investigation. These records may not be used ... for any other purpose, nor may they be disseminated to anyone, public or private, for any other purpose.

*Webster,* 606 F.2d at 1244.

[5] We further hold that any record keeper notified that the youthful offender's conviction has been set aside shall respond in the negative to any and all inquiries into the expunged conviction and that the youthful offender whose conviction has been thus expunged under section 5021 may legally answer in the negative to any inquiry about the expunged conviction. *Webster,* 606 F.2d at 1244–45.

We will reverse and remand with instructions that the district court order Doe's conviction record expunged.

STAPLETON, Circuit Judge, dissenting:

When Congress adopted the Youth Corrections Act, courts had been setting aside convictions for centuries, and I believe the concept of setting aside has a well-understood meaning in the law. When a conviction is set aside, it is rendered without legal effect. So far as I have been able to ascertain, the setting aside of a conviction has never been thought to require the destruction or isolation of the court records evidencing its original entry. I think it reasonable to infer that Congress had this common understanding of "set aside" in mind when it enacted the YCA. Moreover, as Judge Campbell persuasively demonstrates in his opinion for the court in *United States v. Doe,* 732 F.2d 229 (1st Cir. 1984), the legislative history supports this view of the statute. For the reasons set forth in that opinion, I respectfully dissent.



---

# UNITED STATES of America

v.

## Harvey SAMPSON and Rose Sampson

### Harvey Keith Sampson, Appellant.

No. 92–3096.

United States Court of Appeals, Third Circuit.

Argued Sept. 16, 1992.

Decided Nov. 27, 1992.

Defendant was convicted in the United States District Court for the Western District of Pennsylvania, Maurice B. Cohill, Jr., Chief Judge, of marijuana possession, and he appealed. The Court of Appeals, Nygaard, Circuit Judge, held that defendant's prior drug convictions could not be introduced into evidence.

Reversed and remanded.

**1. Criminal Law ⟶369.2(1), 1153(1)**

In deciding whether to admit evidence of prior convictions, trial court must consider whether conviction is logically relevant to any issue other than defendant's propensity to commit crime, and whether probative value of evidence outweighs its prejudicial effect; trial court has considerable discretion with respect to both considerations, and Court of Appeals reviews for abuse of that discretion. Fed.Rules Evid. Rules 402, 403, 404(b), 28 U.S.C.A.

**2. Criminal Law ⟶369.2(1)**

Federal Rule of Evidence governing admissibility of "other crimes" evidence is inclusive, not exclusive, and emphasizes admissibility. Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**3. Criminal Law ⟶369.1, 369.2(1)**

Where evidence of other crimes, wrongs, or bad acts goes only to show defendant's character, or that defendant had propensity to commit crime charged, it must be excluded; however, where evidence also tends to prove some fact besides character, admissibility depends upon

whether its probative value outweighs its prejudicial effect. Fed.Rules Evid.Rules 403, 404(b), 28 U.S.C.A.

**4. Criminal Law ⟜369.1, 374**

If government offers prior offense evidence, it must clearly articulate how that evidence fits into chain of logical inferences, no link of which can be inference that, because defendant committed offense before, he therefore is more likely to have committed offense charged.

**5. Criminal Law ⟜371(1, 12)**

Issues of motive, intent, and knowledge are not irrelevant just because defense theory presupposes them to be so; parameters of admissibility of other crimes evidence are set by material issues and facts government must prove to obtain conviction. Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**6. Criminal Law ⟜695½**

District court, if it admits other crimes evidence, must in first instance, rather than appellate court in retrospect, articulate reasons why evidence also goes to show something other than character; unless reason is apparent from record, mere list of permissible purposes for which such evidence may be admitted is insufficient. Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**7. Criminal Law ⟜338(1)**

"Relevance" is relationship between evidence and material fact at issue which must be demonstrated by reasonable inferences that make material fact more probable or less probable than it would be without the evidence.

　　See publication Words and Phrases
　　for other judicial constructions and
　　definitions.

**8. Criminal Law ⟜1169.5(3)**

Where government has not clearly articulated reasons why other crimes evidence is relevant to any legitimate purpose, instruction that jury may only consider "prior convictions only as they relate to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, and not for any other purpose" does not cure error; there is no realistic basis to believe that jury will cull proper inferences and material facts from evidence, and thus such instruction gives jury inadequate guidance, and does not limit government to theories it originally proffered in support of admission of evidence. Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**9. Criminal Law ⟜673(5)**

Where government has offered one or more permissible theories under which jury may consider other crimes evidence, district court should instruct jury that it may only consider evidence of other crimes in support of those theories. Fed.Rules Evid. Rule 404(b), 28 U.S.C.A.

**10. Criminal Law ⟜338(7), 1153(1)**

Determination as to whether probative value of evidence outweighs its prejudicial effect lies within broad discretion of trial court, and when court balances those two concerns and articulates on record rational explanation for its decision, Court of Appeals will rarely disturb its ruling; however, where court failed to perform this analysis, or where its rationale is not apparent from record, there is no way for Court of Appeals to review its discretion. Fed. Rules Evid.Rule 403, 28 U.S.C.A.

**11. Criminal Law ⟜369.1, 374**

Defendant's prior drug convictions could not be introduced in prosecution for marijuana possession where government failed to explain its basis for admission of that evidence and district court apparently did not balance probative value of prior convictions against prejudicial effect. Fed. Rules Evid.Rules 403, 404(b), 28 U.S.C.A.

Michael R. Cauley (argued), Yochim, Skiba, Moore & Nash, Erie, Pa., for appellant.

Thomas W. Corbett, Jr., U.S. Atty., Michael L. Ivory (argued), Asst. U.S. Atty., Paul J. Brysh, Pittsburgh, Pa., for U.S.

Before STAPLETON, SCIRICA and NYGAARD, Circuit Judges.

rences and materi-
and thus such in-
dequate guidance,
ment to theories it
pport of admission
Evid.Rule 404(b),


(5)

has offered one or
s under which jury
es evidence, district
y that it may only
her crimes in sup-
Fed.Rules Evid.


8(7), 1153(1)

whether probative
ighs its prejudicial
discretion of trial
alances those two
on record rational
sion, Court of Ap-
its ruling; howev-
perform this anal-
ale is not apparent
way for Court of
discretion. Fed.
U.S.C.A.


9.1, 374

drug convictions
in prosecution for
here government
s for admission of
t court apparently
ye value of prior
dicial effect. Fed.
.04(b), 28 U.S.C.A.


rued), Yochim, Ski-
Pa., for appellant.

r., U.S. Atty., Mi-
Asst. U.S. Atty.,
gh, Pa., for U.S.

SCIRICA and
ges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Harvey K. Sampson appeals his conviction for marijuana possession. The question on appeal is whether the district court properly admitted two prior drug convictions into evidence under Federal Rules of Evidence 404(b) and 403. We conclude that it did not, and so will reverse and remand for a new trial.

### I.

Before this conviction, Sampson was convicted in Pennsylvania of conspiracy and possession with intent to distribute cocaine and a related firearm offense. His wife was convicted as a coconspirator. Sampson was also convicted in Michigan of possession with intent to distribute marijuana.

While he was serving a twelve year sentence at a federal prison for the Pennsylvania conviction, Sampson and his wife were indicted for marijuana possession under 21 U.S.C. § 844(a), and possession with intent to distribute under 21 U.S.C. § 841(a)(1). She pleaded guilty, but he pleaded not guilty.

Before trial, the government requested the district court to rule on the admissibility of Sampson's two drug convictions. It argued that the Michigan drug conviction was admissible because that offense was "of the similar nature to the controlled substances as charged in the instant case (i.e. marijuana)"; that the Pennsylvania drug conviction was admissible because it shows that the same parties, husband and wife, were once again involved in a drug matter; and that the Pennsylvania conviction demonstrates a concert of action between Sampson and his wife and tends to establish that this was part of a plan or scheme, refuting an accident or mistake defense. At the pre-trial hearing, the government reiterated that the convictions were "relevant and admissible in this case because they show not only one of those exceptions, but I am advocating more than one, intent, motive, scheme, a plan, a design, and certainly shows familiarity of the

parties, obviously, and background of the charges."

The district court found the evidence admissible, concluding, "I am inclined to think that this is the kind of incident which does fall within the purview of the exceptions listed in 404(b). So I am going to permit it with respect to the two drug convictions, but not with respect to the rifle or gun or whatever it was."

Trial evidence established that on February 1, 1991, Sampson telephoned his wife from prison. This call was monitored and in it she said, "Got that for you today." Sampson replied, "All right." A few minutes later:

Harvey: "So what color you gonna use?"

Rose: "Yellow."

Harvey: "Okay, that'll work."

The next day she visited her husband for about 6 hours. Before seeing her husband, she was subjected to a limited search. Her outer garments were removed, but her inner garments, including pockets, were not searched. The two were then allowed to spend the entire visit in the visiting area where some physical contact was permitted. The visiting area has a number of vending machines, and inmates are permitted to share food during visits. After the visit, Sampson, following prison policy, was strip searched.

The next day Federal Correctional Officer Christopher Fusco searched Sampson's vacant cell. In a standard issue green prison jacket that Sampson used and which was hanging on the rack closest to Sampson's bed, Fusco discovered three yellow balloons. The balloons, tied off at the tip, were badly stained, stunk of feces, and were later found to contain marijuana. During an interrogation by an FBI agent, Sampson admitted that the jacket was his, but denied knowing the balloons were in it. He also denied that his wife gave him drugs during her visit.

The government based its case upon circumstantial evidence. It suggested that the recorded conversation planned a drug transaction using something that was yellow. Officer Fusco testified that he believed these balloons were ingested, passed

in the privacy of the showers, and then hidden in the jacket pocket. Another officer testified that brightly colored balloons are often used to smuggle contraband into prisons because they will "blend in with the food items," making it difficult for supervising officers to "identify the difference between a balloon and a Frito chip or a yellow M & M." Sampson did not testify at trial. His defense was to imply the possibility that the balloons had been planted by another inmate.

A jury found Sampson guilty, and the district court sentenced him to a nine month term of incarceration. Sampson appeals, contending that the district court erred under Federal Rules of Evidence 404(b) and 403 when it admitted his drug convictions into evidence.

## II.

[1] The trial court must consider two issues when deciding whether to admit prior convictions: first, whether the conviction is logically relevant under Rules 404(b) and 402 to any issue other than the defendant's propensity to commit the crime; second, if relevant, whether under Rule 403 the probative value of the evidence outweighs its prejudicial effect. The trial court has "considerable leeway" in both the Rule 404(b) relevancy determination and the balancing test under Rule 403. 2 Weinstein & Berger, Weinstein's Evidence, ¶ 404[12] at 404–75 (1992). We review for an abuse of discretion. *United States v. Traitz*, 871 F.2d 368, 389 (3d Cir.1989).

## A.

[2] Rule 404(b), the basic rule governing the admissibility of character evidence, provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule is inclusive, not exclusive, and emphasizes admissibility. *Government of Virgin Islands v. Edwards*, 903 F.2d 267, 270 (3d Cir.1990) (citing *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir.1988)).

The Supreme Court gives four guidelines on the admissibility of prior bad act evidence: (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted. *Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988).

Character evidence is not rejected because it is irrelevant. On the contrary, "it is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948). The government knows this, and we do too. Although the government will hardly admit it, the reasons proffered to admit prior bad act evidence may often be potemkin village, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character.[1]

[3] Hence, whe goes to show chara dant had a propens it must be exclude evidence also tends sides character, adi whether its probat prejudicial effect. *Islands v. Harris*, Cir.1991).[2]

There is no ques purpose and reaso are admissible in dant is charged wi for example, *Unit* F.2d 552, 553–54 viction admissible knowledge that pa contained drugs *States v. Terry*, 7 1983) (20 year dru show intent and k conversation conce bling); *United S* 784 F.2d 161, 175 vessels in which d sible to show abse cution for violatic sea); *United St* 1199, 1204 (4th Ci actions admissible acts were "not in intentional or wit *United States v.* 1379–80 (5th Cir.1 growing marijuar tent, knowledge; prosecution for c *States v. French* Cir.1992) (drug t prosecution for c spiracy); *United* F.2d 1193, 1202– old drug convicti tions unrelated since defendant ing drugs); *Unit* F.2d 586, 590 (8

1. Indeed, we discern from the record that the government tiptoed around the fringes of the forbidden when in its rebuttal it argued:

    Why would this man take the risk? I want you to consider why would he take the risk. You mean—you are telling me about Harvey Sampson, the man that [sic] took the risk in 1986, who was convicted with possession with intent to distribute, that type of man; the man who took the risk when his daughter was still

    his daughter in '86, still his daughter now. You mean the same man that [sic] took the risk that in 1987 in this Western District of Pennsylvania, took the risk and was convicted of conspiracy with the possession of marijuana, of, excuse me, cocaine, and possession of cocaine, that man. Is that man we are talking about willing to take a risk? That is what he wants you to consider.

2. "The truth is, th aly. Although, clear that an ar form quite as presumption ar

nes, wrongs or
prove the char-
to show that he
ewith. It may,
for other pur-
notive, opportu-
, plan, knowl-
e of mistake or

exclusive, and
*Government of
:, 903 F.2d 267,
nited States v.
) (3d Cir.1988)).

four guidelines
or bad act evi-
t have a proper
(2) it must be
3) its probative
rejudicial effect
the court must
r the evidence
e for which it is
*United States,*
Ct. 1496, 1502,

ot rejected be-
he contrary, "it
ith the jury and
as to prejudice
ecord and deny
efend against a
*lson v. United*
6, 69 S.Ct. 213,
the government
Although the
mit it, the rea-
ior bad act evi-
ikin village, be-
spect, is often
how some other
s to impugn the

iis daughter now.
hat [sic] took the
/estern District of
ession of marijua-
and possession of
nan we are talking
. That is what he

[3] Hence, where the evidence only
goes to show character, or that the defen-
dant had a propensity to commit the crime,
it must be excluded. Where, however, the
evidence also tends to prove some fact be-
sides character, admissibility depends upon
whether its probative value outweighs its
prejudicial effect. *Government of Virgin
Islands v. Harris,* 938 F.2d 401, 419 (3d
Cir.1991).[2]

There is no question that, given a proper
purpose and reasoning, drug convictions
are admissible in a trial where the defen-
dant is charged with a drug offense. See
for example, *United States v. Simon,* 842
F.2d 552, 553–54 (1st Cir.1988) (drug con-
viction admissible to show intent and
knowledge that package defendant carried
contained drugs and not books); *United
States v. Terry,* 702 F.2d 299, 316 (2d Cir.
1983) (20 year drug conviction admissible to
show intent and knowledge that telephone
conversation concerned drugs and not gam-
bling); *United States v. Wright-Barker,*
784 F.2d 161, 175 (3d Cir.1986) (presence on
vessels in which drugs were hidden admis-
sible to show absence of mistake in prose-
cution for violation of drug laws in high
sea); *United States v. Percy,* 765 F.2d
1199, 1204 (4th Cir.1985) (prior drug trans-
actions admissible to show that defendant's
acts were "not inadvertent, accidental, un-
intentional or without guilty knowledge");
*United States v. Logan,* 949 F.2d 1370,
1379–80 (5th Cir.1991) (state conviction for
growing marijuana admissible to show in-
tent, knowledge, and absence of mistake in
prosecution for drug conspiracy); *United
States v. French,* 965 F.2d 67, 73–74 (6th
Cir.1992) (drug transactions admissible in
prosecution for drug possession and con-
spiracy); *United States v. Chaidez,* 919
F.2d 1193, 1202–03 (7th Cir.1990) (10 year
old drug conviction pertaining to transac-
tions unrelated to the charge admissible
since defendant denied knowingly possess-
ing drugs); *United States v. Haynes,* 881
F.2d 586, 590 (8th Cir.1989) (operation of

"weed house" admissible to show knowl-
edge and intent in prosecution for opera-
tion of "crack house"); *United States v.
Rocha,* 553 F.2d 615, 616 (9th Cir.1977)
(evidence of prior transportation of mari-
juana, which resulted in acquittal, admissi-
ble to show intent in prosecution for pos-
session of marijuana with intent to distrib-
ute); *United States v. Poole,* 929 F.2d
1476, 1481 (10th Cir.1991) (cocaine sale was
admissible to show defendant knew that
cocaine was being sold at his restaurant
and that he intended to distribute it); *Unit-
ed States v. Jones,* 913 F.2d 1552, 1566
(11th Cir.1990) (cocaine sale admissible to
show intent to sell in prosecution for con-
spiracy and possession of cocaine with in-
tent to distribute).

[4] If the government offers prior of-
fense evidence, it must clearly articulate
how that evidence fits into a chain of logi-
cal inferences, no link of which can be the
inference that because the defendant com-
mitted drug offenses before, he therefore
is more likely to have committed this one.
In *United States v. Rubio-Estrada,* 857
F.2d 845 (1st Cir.1988), police officers
searched the defendant's house and seized
a ledger of sales transactions, an electronic
scale, white powder, and 125 grams of co-
caine. The defendant was charged with
cocaine possession with intent to distribute.
His main defense at trial was that he did
not know that cocaine was in his house.
He contended that the district court erred
when it admitted evidence of his prior con-
viction for cocaine possession and distribu-
tion. The Court of Appeals for the First
Circuit held that the evidence was relevant
to show knowledge and intent, but it then
carefully articulated a complete chain of
legitimate inferences to be drawn from the
prior conviction. It concluded that these
legitimate inferences made the evidence
relevant, and could persuade a reasonable
jury to believe that it is "logically some-
what more likely that defendant did know
about the cocaine in his house and did

2. "The truth is, this part of our law is an anom-
aly. Although, logically speaking, it is quite
clear that an antecedent bad character would
form quite as reasonable a ground for the
presumption and probability of guilt as previ-

ous good character lays the foundation of
innocence, yet you cannot, on the part of the
prosecution, go into evidence as to character."
*Michelson,* 335 U.S. at 476 n. 9, 69 S.Ct. at 218 n.
9 (citation omitted).

intend to distribute it than one who did not have a prior conviction." *Id.* at 848.

In *Government of Virgin Islands v. Pinney*, 967 F.2d 912 (3d Cir.1992), Pinney was charged with aggravated rape. The victim testified that when she was seven years old, Pinney raped her in his apartment. The district court allowed the testimony of the victim's sister, who testified that six years earlier Pinney also raped her in the same apartment when she was six years old. We reasoned that the evidence of a prior rape, albeit six years old, was relevant to show intent because "as a matter of logic, it is at least marginally more likely that he did so intentionally if he had previous experience with intercourse." *Id.* at 916. However improbable this inference may seem, it was a link to "a logical chain of inferences from Jamila's testimony to a relevant issue and no link in that chain involves an inference that because Pinney committed the first assault he was more likely to have committed the second as well." *Id.*

Thus, the burden on the government is not onerous. All that is needed is *some* showing of a proper relevance. Whereupon the trial court must judge the government's proffered reason, the potential for confusion and abuse, and the significance of the evidence, and decide whether its probative value outweighs its prejudicial effect.

[5] Sampson contends that because his defense was ignorance of the drugs in his jacket, motive, intent and knowledge were not at issue and hence the evidence is irrelevant to these purposes. We disagree. Issues are not irrelevant just because the defense's theory presupposes them to be so. The parameters of Rule 404(b) are not set by the defense's theory of the case; they are set by the material issues and facts the government must prove to obtain a conviction.

[6] The government must therefore proffer a logical chain of inference consistent with its theory of the case. The district court, if it admits the evidence, must in the first instance, rather than the appellate court in retrospect, articulate reasons

why the evidence also goes to show something other than character. Unless the reason is apparent from the record, a mere list of the purposes found in Rule 404(b) is insufficient. The district court must put a chain of inferences into the record, none of which is the inference that the defendant has a propensity to commit this crime.

[7] The district court failed to do so and, hence, it erred. It only said that the evidence "fall[s] within the purview of the exceptions listed in 404(b)." This conclusion may have been sufficient had the government thoroughly explained its basis for admission, because we could then infer that the district court adopted the government's proffered reason. But the government did not do this. It essentially recited, as it does on appeal, the litany of "knowledge, intent, absence of mistake, etc." without explaining how that evidence relates to the recited purposes. That is not enough. Relevance is not an inherent characteristic, *Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501; nor are prior bad acts intrinsically relevant to "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Relevance is a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence.

We note also that the district court gave the following precautionary instruction:

Now you heard testimony regarding the defendant's prior convictions for drug offenses. You may not consider the defendant's prior convictions as evidence tending to establish a tendency to commit the offense with which he is charged in this case. In other words, you may not infer because the defendant was convicted of drug offenses in the past it is any more likely that he committed the offense charged in the indictment. You may consider the defendant's prior convictions only as they relate to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or

absence of m
for any other

[8, 9] This in
error. Where
clearly articula
dence is relevan
there is no reali
jury will cull
material facts f
ply repeating th
ble theories und
instruction gave
ance. It also fa
to the theories
admission of t
where the gove
more permissib
jury may cons
trial judge shou
may only consic
port of those t

[10] Moreov
clude that the j
any of purpose:
proper purpose
the trial court r
the evidence's
its prejudicial e
*ed States v. E*
(3d Cir.1988).
in the broad d
When a court
ancing and art
tional explanat
ruling. *Gover*
*Harris*, 938 F
Where, howev
form this analy
not apparent f
way to review
967 F.2d at 91

The record
balancing. Al
cluded Sampsc
we will not inf
ed the Rule 40
victions. This
where we rev
"the trial cour
denying defen

to show some-
r. Unless the
record, a mere
a Rule 404(b) is
urt must put a
record, none of
the defendant
: this crime.

ailed to do so
y said that the
purview of the
' This conclu-
nt had the gov-
ed its basis for
then infer that
e government's
government did
' recited, as it
of "knowledge,
, etc." without
e relates to the
s not enough.
t characteristic,
39, 108 S.Ct. at
cts intrinsically
rtunity, intent,
ge, identity, or
vance is a rela-
ce and a materi-
be demonstrat-
s that make a
e or less proba-
it the evidence.

trict court gave
r instruction:
nony regarding
convictions for
y not consider
victions as evi-
h a tendency to
h which he is
n other words,
e the defendant
offenses in the
that he commit-
l in the indict-
the defendant's
they relate to
rtunity, intent,
dge, identity, or

absence of mistake or accident, and not
for any other purpose.

**[8, 9]** This instruction does not cure the
error. Where the government has not
clearly articulated reasons why the evi-
dence is relevant to any legitimate purpose,
there is no realistic basis to believe that the
jury will cull the proper inferences and
material facts from the evidence. By sim-
ply repeating the entire litany of permissi-
ble theories under Rule 404(b), the judge's
instruction gave the jury inadequate guid-
ance. It also failed to limit the government
to the theories it proffered in support of
admission of the evidence. Accordingly,
where the government has offered one or
more permissible theories under which the
jury may consider the prior offense, the
trial judge should instruct the jury that it
may only consider the prior offense in sup-
port of those theories.

### B.

**[10]** Moreover, even if we could con-
clude that the government's bare-bones lit-
any of purposes from Rule 404(b) showed a
proper purpose, we cannot affirm because
the trial court must still determine whether
the evidence's probative value outweighs
its prejudicial effect under Rule 403. *Unit-
ed States v. Echeverri*, 854 F.2d 638, 644
(3d Cir.1988). This determination lies with-
in the broad discretion of the trial court.
When a court engages in a Rule 403 bal-
ancing and articulates on the record a ra-
tional explanation, we will rarely disturb its
ruling. *Government of Virgin Islands v.
Harris*, 938 F.2d 401, 420 (3d Cir.1991).
Where, however, the court failed to per-
form this analysis, or where its rationale is
not apparent from the record, there is no
way to review its discretion. See *Pinney*,
967 F.2d at 918.

The record does not disclose a Rule 403
balancing. Although the district court ex-
cluded Sampson's prior firearm conviction,
we will not infer from this that it conduct-
ed the Rule 403 analysis on the other con-
victions. This case is similar to *Pinney*,
where we reversed a conviction because
"the trial court did not explain why it was
denying defendant's motion under Rule 403

and the reason for doing so is not other-
wise apparent from the record." *Id.*

### III.

**[11]** In sum, we are not holding that
the evidence of Sampson's prior drug con-
victions is not relevant to a proper purpose.
We simply hold that a legitimate relevance
has not been properly demonstrated and
that the record does not show that the
court conducted a Rule 403 balancing. In
the new trial, if the government again tries
to introduce the evidence, it must carry the
burden of proffering a rational chain of
inferences and the district court must then
evaluate the given reasons in the context of
the developing case and give the rationale
for its ruling. We will reverse and remand
for a new trial.



INTERNATIONAL UNION OF ELEC-
TRONIC, ELECTRIC, SALARIED, MA-
CHINE AND FURNITURE WORKERS,
AFL–CIO; James R. Baldwin; Harry J.
Layne; Rodney J. Pettinato; Pauline
Rothermel; Marlyn Thompson

v.

MURATA ERIE NORTH AMERICA,
INC., A Georgia Corporation,
Appellant.

No. 91–3513.

United States Court of Appeals,
Third Circuit.

Argued Feb. 10, 1992.

Decided Nov. 30, 1992.

Participants in hourly employee de-
fined benefit retirement plans and their
union brought class action against employ-
er for alleged violation of Employee Retire-
ment Income Security Act (ERISA) arising
from distribution of excess assets of plans

*ng significant*
*as in Lancas-*
*sought by an*
*he purpose of*
*sues, that at-*
*sh the signifi-*
*er, 6 F.3d at*

*lose anything*
*ienced by the*
*of fact might*
*from the FBI*
*injuries obvi-*
*a necessary*
*it the district*

*should deter-*
*of the symp-*
*s, as well as*
*tention" they*
*a position to*
*lace inflicted*
*meaning of*

*for the guid-*
*it reevaluates*
*and makes its*
*Guidelines, as*
*quire that an*
*or a substan-*
*qualify as a*
*6 F.3d at 210*
*it likely that*
*in which a*
*appropriate*
*nged effects.*
*by reference*
*for Phaser*
*, given their*
*fact should*
*notional liter-*
*fects with a*
*if the record*
*d bank teller*
*bed by those*
*a moment or*
*rt would be*
*or she had*
*blow the ef-*
*in a moment*
*ficant injury.*

Blindness, disorientation, breathing difficulty, and extreme discomfort sufficient in combination to induce panic for a period of ten to fifteen minutes are something else entirely and can rationally be viewed as more than an insignificant injury.

## VII.

The judgment of the district court will be reversed and this matter will be remanded for resentencing only.



## UNITED STATES of America

### v.

### Orlando JACOBS, Appellant.

### No. 93–3644.

United States Court of Appeals,
Third Circuit.

Argued June 7, 1994.

Decided Jan. 12, 1995.

Defendant was convicted in the United States District Court for the Western District of Pennsylvania, Donald E. Ziegler, Chief Judge, of possession of firearm by convicted felon, and he appealed. The Court of Appeals, Alito, Circuit Judge, held that: (1) defendant was not entitled to have jury determine possession of weapon before hearing of defendant's prior conviction; (2) there was independent basis for admitting fact that prior conviction was for burglary regardless of whether specific felony would be otherwise admissible; (3) evidence suggesting that drug transaction was being negotiated just before defendant allegedly pulled out revolver and was arrested was admissible; (4) use of phrase "moral certainty" in reasonable doubt instruction, although inadvisable, did not violate due process; and (5) Sentencing Commission had authority to promulgate armed career criminal provision of Sentencing Guidelines.

Affirmed.

Mansmann, Circuit Judge, filed concurring opinion.

1. Criminal Law ⚖618
    Defendant charged with possession of firearm by convicted felon was not entitled to bifurcation of element of possession from element of prior conviction so that jury could determine possession before hearing of defendant's prior conviction.

2. Witnesses ⚖337(19)
    Fact that burglary was type of felony involved in defendant's prior conviction was not so unfairly prejudicial as to preclude admission of the conviction for impeachment in prosecution for possession of firearm by convicted felon. Fed.Rules Evid.Rules 403, 609(a)(1), 28 U.S.C.A.

3. Criminal Law ⚖371(12)
    Evidence suggesting that drug transaction was being negotiated just before defendant allegedly pulled out revolver and was arrested for weapons offense was admissible as evidence tending to show that defendant was participant in selling of drugs in order to show motive for carrying firearm. Fed. Rules Evid.Rules 402, 403, 404(b), 28 U.S.C.A.

4. Constitutional Law ⚖268(11)
    Criminal Law ⚖789(8), 822(16)
    Use of phrase "moral certainty" in reasonable doubt instruction, although inadvisable, did not violate due process and did not dilute constitutionally required standard of proof in light of showing that instructions, taken as a whole, adequately conveyed concept of proof beyond reasonable doubt.

5. Criminal Law ⚖789(4)
    District court's statement that jury should acquit defendant if it viewed evidence as reasonably permitting either finding of innocence or of guilt, even when combined with use of phrase "moral certainty" in reasonable doubt instruction, did not dilute con-

stitutionally required standard of proof beyond reasonable doubt.

**6. Criminal Law ⬠1200**

Sentencing Commission had authority to promulgate armed career criminal provision of Sentencing Guidelines in light of requirement of Sentencing Reform Act that Commission establish sentencing range for each category of offense involving each category of defendant; armed career criminal provision defined particular category of defendants and set out special rules for calculating offense levels and criminal history categories. U.S.S.G. § 4B1.4, 18 U.S.C.A.App.; 28 U.S.C.A. § 994(b)(1), (c); 18 U.S.C.A. § 924(e).

_____

Frederick W. Thieman, U.S. Atty., Almon S. Burke, Jr. (argued), Bonnie R. Schlueter, Asst. U.S. Attys., Office of U.S. Atty., Pittsburgh, PA, for appellee.

Thomas S. White, Federal Public Defender, W. Penn Hackney, First Asst. Federal Public Defender, Karen Sirianni Gerlach (argued), Asst. Federal Public Defender, Pittsburgh, PA, for appellant.

Before: MANSMANN, ALITO, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

Orlando Jacobs has appealed the judgment imposed following his conviction for possession of a firearm by a convicted felon. He argues: (1) that the district court should have bifurcated the elements of the offense with which he was charged, (2) that, if this bifurcation was denied, the district court should have prevented the jury from learning that the prior felony conviction alleged in the indictment was for burglary, (3) that the district court should have excluded evidence that his possession of the firearm occurred during an aborted drug transaction, (4) that the district court gave an erroneous instruction on the requirement of proof beyond a reasonable doubt, and (5) that the Sentencing Commission exceeded its authority in promulgating the "Armed Career Criminal" pro-

vision of the Guidelines, U.S.S.G. § 4B1.4. We affirm the judgment of the district court.

### I.

Jacobs was indicted in the United States District Court for the Western District of Pennsylvania for one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The indictment alleged that Jacobs possessed a .357 magnum revolver on October 22, 1992, after having been previously convicted in 1988 in the Court of Common Pleas of Allegheny County, Pennsylvania, for the crime of burglary.

Before trial, Jacobs' attorney filed a motion in limine to exclude or limit evidence of Jacobs' prior convictions. Noting that the government had stated in pretrial submissions that Jacobs had two prior felony convictions (for burglary and robbery) in addition to the conviction alleged in the indictment, the defense made three separate requests. First, the defense asked the court "to sever the element of possession from the element of a prior conviction so that the jury [would] determine the issue of possession before being informed that Jacobs ha[d] a prior conviction." App. at 313–16 (citing *United States v. Joshua*, 976 F.2d 844 (3d Cir.1992), and *United States v. Busic*, 587 F.2d 577 (3d Cir.1978), *rev'd on other grounds*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980)).

Second, the defense requested that, if severance was not granted, the court should nevertheless prevent the jury from learning that the prior conviction charged in the indictment was for burglary. *See id.* at 320–21. The defense argued that "to inform the jury of the nature of his prior conviction [was] unnecessary and [would] unfairly prejudice him in violation of Rule 403 of the Federal Rules of Evidence and violate his right to due process of law." *Id.* at 320.

Third, the defense argued that, if Jacobs chose to testify, his prior convictions should not be admitted for impeachment purposes under Fed.R.Evid. 609. *See id.* at 321–24.

The district court denied these requests. With respect to severance, the court stated that *Joshua* and *Busic* were not controlling because they "deal[t] with the issue of sever-

ing other counts," not [...] offense. App. 87–88. [...] issues, the court stated

"I am going to per[...] the prior burglary con[...] going to get into th[...] occurred unless you c[...] the government will [...] state court papers ref[...] in that court and the [...] lieve again that is ap[...] circumstances, and I c[...] prejudice to the defen[...] circumstances, and if [...] exist, the probative va[...] weighs any prejudice [...]

*Id.* at 88–89.

At trial, the prosecuti[...] the following. On Oc[...] undercover Pittsburgh p[...] Ciganik and Maurice Jo[...] an unmarked car. As [...] intersection, they spott[...] two women, Alice Wrigh[...] When the officers sl[...] yelled, "[A]re you holdi[...] preted this statement a[...] ics. Ciganik answered[...] then asked, "[A]re you[...] responded "yes," and W[...] to pull over. Wright [...] spoke to the defendant, [...] a few feet of her.

When Ciganik left [...] Wright recognized him [...] defendant, "[T]ask forc[...] Ciganik took out his ba[...] he and his partner wer[...] the defendant then too[...] appeared to swallow [...] approached with his g[...] dant pulled a .357 magn[...] waistband and pointed [...] the defendant was su[...] and arrested.

The defendant testifi[...] behalf and disputed [...] events. He stated that [...] Wright was arguing w[...] cording to the defendan[...] of his car, put a gun in [...] told him to open his m[...]

ing other counts," not elements of a single offense. App. 87–88. Turning to the other issues, the court stated:

I am going to permit the admission of the prior burglary conviction. We are not going to get into the details of how it occurred unless you open that door. But the government will offer, I assume, the state court papers reflecting the judgment in that court and the sentence, and I believe again that is appropriate under the circumstances, and I don't believe that any prejudice to the defendant exists under the circumstances, and if any prejudice does so exist, the probative value substantially outweighs any prejudice.

*Id.* at 88–89.

At trial, the prosecution's evidence showed the following. On October 22, 1992, two undercover Pittsburgh police officers, George Ciganik and Maurice Jones, were on patrol in an unmarked car. As they approached an intersection, they spotted the defendant and two women, Alice Wright and June Coleman. When the officers slowed down, Wright yelled, "[A]re you holding [?]." Jones interpreted this statement as referring to narcotics. Ciganik answered "no," and Wright then asked, "[A]re you looking?" Ciganik responded "yes," and Wright told the officers to pull over. Wright then motioned and spoke to the defendant, and walked to within a few feet of her.

When Ciganik left the car, however, Wright recognized him and shouted to the defendant, "[T]ask force, get out of her[e]." Ciganik took out his badge and shouted that he and his partner were police officers, and the defendant then took two steps back and appeared to swallow objects. As Ciganik approached with his gun drawn, the defendant pulled a .357 magnum revolver from his waistband and pointed it at him. However, the defendant was subsequently disarmed and arrested.

The defendant testified at trial on his own behalf and disputed this version of the events. He stated that just before his arrest, Wright was arguing with the officers. According to the defendant, Ciganik jumped out of his car, put a gun in the defendant's face, told him to open his mouth, "got real mad,"

and then handcuffed him and threw him in the car. The defendant denied having seen the .357 magnum before the trial. He also testified that at the time of his arrest he had a cast on his arm and was wearing sweat pants, and he said that the .357 magnum could not have fit in the pants' waistband or pockets. On direct examination, the defendant admitted the 1988 burglary conviction, stating that he had pled guilty because he was guilty, and on cross-examination the prosecutor elicited a similar admission, apparently for impeachment purposes.

Coleman also testified for the defense, but her testimony was sketchy. She said that she, Wright, and the defendant were walking together when Wright approached a car and then motioned to the defendant. Coleman said that she kept walking and that, when she heard shouting and turned around, Wright and the defendant were in custody.

The jury found the defendant guilty. Applying the "Armed Career Criminal" provision of the Guidelines, U.S.S.G. § 4B1.4, the district court concluded that Jacobs' guidelines' sentencing range was 262 to 327 months, and the court sentenced him to imprisonment for 22 years. This appeal followed.

## II.

[1] The defendant's first argument is based primarily on *Busic* and *Joshua.* In *Busic,* we stated in dictum that, if a defendant is charged with multiple offenses, including one requiring proof of a prior felony conviction, the trial judge should sever the latter offense unless the conviction would be independently admissible with respect to the other charges. *See Busic,* 587 F.2d at 585. We noted, however, that one district court had addressed this problem by taking the "novel approach" of conducting a "two-stage trial, whereby the jury, having reached a verdict on the other counts, would then proceed to consider the counts requiring proof of prior convictions." *Id.*

In *Joshua,* we specifically approved this latter approach. In that case, the defendant was charged with (count I) armed bank robbery, (count II) use of a firearm during a

crime of violence, (count III) receipt of a firearm with an obliterated serial number, and (count IV) possession of a firearm by a convicted felon. The district court conducted a bifurcated trial. "The jury first heard evidence and deliberated concerning the first three counts, and then heard evidence of the defendant's criminal record and deliberated concerning Count Four." *Id.* at 846. On appeal, the defendant argued that the district court should have severed count IV and conducted an entirely separate trial on that charge, but we disagreed and wrote:

> We conclude that the procedure adopted by the district court here strikes an appropriate balance between the concern about prejudice to the defendant and considerations of judicial economy.... The defendant's criminal past is not made known to the jury until after they have reached a verdict with respect to the other charges. At the same time, this procedure is considerably more efficient than conducting an entire new jury trial on the weapon possession charge at a later date.

*Joshua,* 976 F.2d at 848.

*Joshua* is not directly applicable to this case because here the defendant was charged in a single-count indictment, but the defendant maintains that the logic of *Joshua* required a bifurcated trial nevertheless. He argues:

> [W]here, as here, a prior conviction is an element of the offense, that element should be severed, and the jury should be permitted to determine the existence of the other elements, before learning that the defendant has a prior conviction. The goal of such severance would be the same as the goal for severance of counts: the insulation of the jury from prejudicial information to which it would not otherwise be exposed. It would therefore be a logical extension of *Joshua* to allow severance of elements of the offense.

Appellant's Br. at 9.

This precise argument has been rejected by three other courts of appeals, and we find their reasoning persuasive. In *United States v. Collamore,* 868 F.2d 24 (1st Cir.1989), the defendant, who had been indicted for possession of a firearm by a convicted felon,

"moved to bifurcate the possession element of the crime from the element pertaining to his prior convictions." *Id.* at 25–26. The district court ruled in the defendant's favor and entered an order providing that the issue of possession would be tried first without any mention of the defendant's prior convictions. If the jury found that the defendant had possessed the weapon, "the jury would be brought back to the courtroom and the government would be provided a full opportunity to produce any admissible evidence as to any aspect of th[e] defendant's prior criminal record." *Id.* at 26.

The First Circuit, proceeding under its mandamus power, reversed. The court observed that neither the parties nor the court had located "a single case allowing ... bifurcation of a trial by dividing it along the elements of the crime charged." *Id.* at 27. The court continued:

> The dearth of cases, we feel, is because such a procedure would result in serious problems..... [W]hen a jury is neither read the statute setting forth the crime nor told of all the elements of the crime, it may, justifiably, question whether what the accused did was a crime. The present case is a stark example. Possession of a firearm by most people is *not* a crime. A juror who owns or who has friends and relatives who own firearms may wonder why Collamore's possession was illegal. Doubt as to the criminality of Collamore's conduct may influence the jury when it considers the possession element.

*Id.* at 28.

The same issue was addressed by the Eleventh Circuit in *United States v. Birdsong,* 982 F.2d 481 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2984, 125 L.Ed.2d 680 (1993). Birdsong appealed his conviction for possession of a firearm by a convicted felon and contended that the district court had erred in denying his "motion to bifurcate the possession issue from the other elements of the crime charged." *Id.* at 482. Rejecting this argument, the Eleventh Circuit noted that "[a] request to bifurcate the presentation of evidence on different elements of a single offense is extremely rare."

*Id.* The cou[...]
soning of the [...]
[held] that t[...]
failing to gr[...]
bifurcate th[...]
charge of po[...]
victed felon.[...]

The Ninth [...]
clusion in *U[...]
(9th Cir.199[...]
been indicted [...]
convicted fel[...]
questing tha[...]
'possession' [...]
'felon' elemen[...]
court grante[...]
district cour[...]
that "the pa[...]
session [of t[...]
case and it i[...]
wisdom of s[...]
convicted Ba[...]
Barker woul[...]
prior felony [...]
the indictme[...]
not) [have b[...]

The gover[...]
trict court's [...]
mandamus, [...]
the governm[...]
The court ob[...]
Barker "requ[...]
beyond a rea[...]
been convict[...]
district court [...]
ture of the cl[...]
held that a "[...]
the single of [...]
sion of a fire[...]
*Id.*

While our [...]
ered the pr[...]
defendant in [...]
similar arg[...]
*Williams,* 61[...]
*denied,* 445 [...]
L.Ed.2d 770 [...]
was charged [...]
convicted fel[...]
ulate that t[...]
felon and to [...]
the jury of [...]

Id. The court "specifically adopt[ed] the reasoning of the First Circuit in *Collamore* and [held] that the District Court did not err by failing to grant the defendant's motion to bifurcate the trial on the elements of the charge of possession of a firearm by a convicted felon." Id.

The Ninth Circuit reached a similar conclusion in *United States v. Barker,* 1 F.3d 957 (9th Cir.1993). Barker, who likewise had been indicted for possession of a firearm by a convicted felon, filed a motion in limine, requesting that the trial judge "bifurcate the 'possession' element of the crime from the 'felon' element of the crime," and the district court granted his motion. Id. at 958. The district court proposed to instruct the jury that "the parties have agreed that mere possession [of the firearm] is criminal in this case and it is not for [the jury] to decide the wisdom of such a law." Id. "If the jury convicted Barker absent the felony element, Barker would [have] then stipulate[d] to the prior felony conviction. Under this scheme, the indictment would not (and indeed could not) [have been] read to the jury." Id.

The government sought review of the district court's bifurcation order by means of mandamus, and the Ninth Circuit granted the government's petition. See id. at 959. The court observed that the charge against Barker "require[d] the government to prove beyond a reasonable doubt that Barker ha[d] been convicted of a prior felony" but that the district court's order changed "the very nature of the charged offense." Id. The court held that a "district court may not bifurcate the single offense of being a felon in possession of a firearm into multiple proceedings." Id.

While our court has not previously considered the precise argument raised by the defendant in this case, we rejected a very similar argument in *United States v. Williams,* 612 F.2d 735 (3d Cir.1979), cert. denied, 445 U.S. 934, 100 S.Ct. 1328, 63 L.Ed.2d 770 (1980). There, the defendant was charged with receipt of a firearm by a convicted felon. His attorney offered to stipulate that the defendant "was a convicted felon and to preclude thereby any mention to the jury of the appellant's felony status ei-

ther by argument of counsel for the government or through instructions to the jury by the court on the elements of the crime." Id. at 740. Holding that the government was not required to agree to the stipulation, we wrote:

> First, we perceive no authority for counsel or the court to modify a criminal statute enacted by Congress by eliminating through stipulation one of the elements of the crime. But even if the proffered stipulation did not go so far as to constitute the modification of a criminal statute, "The Government was not required to accept a judicial admission of the defendant but had a right to proffer proof on the point admitted."

Id. (quoting *United States v. Brickey,* 426 F.2d 680, 686 (8th Cir.), cert. denied, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970)); see also *United States v. Gilliam,* 994 F.2d 97, 102 (2d Cir.), cert. denied, — U.S. —, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993).

In view of these authorities, we hold that the district court in this case acted correctly in denying the defendant's bifurcation request.

## III.

The defendant argues that, even if bifurcation was not required, the district court erred in permitting the jury to learn that his prior conviction was for burglary. We reject this argument as well.

Some federal criminal offenses, including the offense with which the defendant was charged in this case, have as one of their elements the fact that the defendant was previously convicted for another crime. In a prosecution for an offense having such an element, the government generally seeks to establish the requisite prior conviction by offering a copy of a prior judgment of conviction, and this judgment usually reveals the specific offense for which the defendant was previously convicted. Because this judgment goes directly to one of the elements needed for conviction, it is unquestionably relevant under Fed.R. [...] , but the defense often contends [...] ment should nevertheless h [...] hole or in part under

Fed.R.Evid. 403 because evidence regarding the specific felony for which the defendant was previously convicted is not necessary and may be unfairly prejudicial. Instead of admitting an unredacted judgment, it is often argued, the court should require redaction of the judgment, require the government to accept a stipulation that the defendant was previously convicted for an undisclosed felony, or perhaps take judicial notice of the fact that the defendant has a prior conviction for an unspecified felony. Faced with such arguments, the courts of appeals have handed down decisions that fall into essentially three groups. Several courts of appeals have taken the position that evidence of the specific felony for which the defendant was previously convicted should generally be kept from the jury.[1] Other courts of appeals have held that the question whether to admit such evidence is committed to the discretion of the trial judge and should be decided on a case-by-case basis.[2] Finally, some courts of appeals have held that such evidence should be admitted.[3]

Our court has not squarely decided this question,[4] but our opinion in *Williams*, which we discussed above, appears most closely

aligned with the last group of decisions. The defendant in *Williams* offered to stipulate to a prior felony conviction, but his proposal, rather than informing the jury that he had a conviction for an undisclosed felony, would have prevented the jury from learning that he had any prior felony conviction. It must be noted, however, that in holding that the *Williams* trial judge had properly refused the defense proposal, we wrote broadly that "'[t]he Government was not required to accept a judicial admission of the defendant but had a right to proffer proof on the point admitted.'" *Williams*, 612 F.2d at 740, (quoting *United States v. Brickey*, 426 F.2d 680, 686 (8th Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970)).

[2] In any event, we are not required in this case to resolve the general question addressed by the other courts of appeals. As noted above (*see* typescript at 4–5), Jacobs elected to take the stand, and he testified during both direct[5] and cross-examination that he had been convicted in 1988 for burglary. Under Rule 609(a)(1), the fact that Jacobs had a prior felony conviction and the type of felony involved[6] were admissible for

impeachment purposes The district court's ru question is subject to discretion,[7] and we fin Accordingly, there was for admitting the fact prior conviction was fo

## IV

[3] The defendant district court erred in suggesting that a drug negotiated just before h the revolver and was a dant contends that it admissible under Fed.R and that it should have Fed.R.Evid. 403. We

Evidence tending to dant was a participant i was relevant under Rul sible under Rule 404( defendant had a motiv arm. Moreover, exclu under Rule 403 was not evidence had significant was not substantially ou ger of unfair prejudice

## V.

[4] The defendant m trict court violated due jury instruction that dil ally required standard reasonable doubt. The challenges the use of th tainty" in the following tions:

Proof beyond a reas therefore, be of such ter that you would b act upon it without h important of your ow A reasonable doubt e a careful and impartia

---

1. The First and Fourth Circuits have so held, and the Second Circuit has taken the same view in dictum. *See United States v. Lewis*, 40 F.3d 1325, 1342 (1st Cir.1994) (noting that the district court should have accepted the defendants' offers to stipulate that they were felons); *United States v. Rhodes*, 32 F.3d 867, 870–71 (4th Cir.1994); *United States v. Tavares*, 21 F.3d 1, 3–5 (1st Cir.1994) (in banc); *United States v. Gilliam*, 994 F.2d 97, 103 (2nd Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993); *United States v. Poore*, 594 F.2d 39, 41–42 (4th Cir.1979).

2. *See United States v. Brinklow*, 560 F.2d 1003, 1006 (10th Cir.1977) ("Whether the government should be required to accept defendant's offer to stipulate as to the fact of a prior felony conviction is a discretionary matter with the trial court."), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978); *United States v. O'Shea*, 724 F.2d 1514, 1516–17 (11th Cir.1984); *see also United States v. Dockery*, 955 F.2d 50, 54 (D.C.Cir.1992) (dictum).

3. *See United States v. Breitkreutz*, 8 F.3d 688, 690–93 (9th Cir.1993) (upholding the rule that "the prosecution has a right to refuse a stipulation"); *United States v. Flenoid*, 718 F.2d 867, 868 (8th Cir.1983); *United States v. Blackburn*, 592 F.2d 300, 301 (6th Cir.1979).

4. The question at issue here—the admission of evidence regarding the type of felony for which a defendant was previously convicted when the defendant is charged with an offense having as one of the elements the fact that the defendant has a prior felony conviction—is distinct from the question of admitting comparable evidence under Fed.R.Evid. 404(b). With respect to the latter question, *see, e.g., Government of the Virgin Islands v. Archibald*, 987 F.2d 180, 186 (3d Cir. 1993).

5. There is authority for the proposition that this testimony on direct examination constituted a waiver of any objection to the admission of the conviction for impeachment, *see United States v. Williams*, 939 F.2d 721, 723–25 (9th Cir.1991), but since we hold that it is admissible for impeachment, we need not reach that issue here.

6. Case law firmly establishes that it is proper to admit evidence of the type of felony involved in a prior conviction used for impeachment under Fed.R.Evid. 609(a)(1). *See* 3 C. Mueller & L. Kirkpatrick, *Federal Evidence* § 279 at 272 (1994) (citing cases); 3 J. Weinstein and M. Berger, *Weinstein's Evidence* § 609[05] at 66–67 & n. 20 (1994) (same); McCormick, *Evidence* § 43 at 98 (1984) (same); M. Graham, *Federal Practice and Procedure* § 6516 at 79 & n. 1 (1992

& 1994 Supp.) (same); 583 F.2d 659, 670 n. 1 that cross-examination ca facts of a prior crime") 909, 99 S.Ct. 1217, 59 L *see* M. Graham, *supra*, § ing limitation).

of decisions. The red to stipulate to but his proposal, jury that he had a sed felony, would rom learning that onviction. It must a holding that the properly refused wrote broadly that not required to ac- the defendant but roof on the point 312 F.2d at 740, *Brickey*, 426 F.2d *nied*, 400 U.S. 828, 57 (1970)).

are not required in eneral question ad- rts of appeals. As ipt at 4–5), Jacobs d, and he testified i cross-examination ed in 1988 for bur- a)(1), the fact that r conviction and the were admissible for

ere—the admission of e of felony for which a convicted when the an offense having as act that the defendant tion—is distinct from comparable evidence With respect to the *overnment of the Virgin* F.2d 180, 186 (3d Cir.

e proposition that this nination constituted a o the admission of the ent, *see United States v.* 723–25 (9th Cir.1991), it was admissible for ot reach that issue here.

shes that it is proper to e of felony involved in a or impeachment under *See* 3 C. Mueller & L. *idence* § 279 at 272 J. Weinstein and M. *nce* § 609[05], at 66–67 McCormick, *Evidence* ); M. Graham, *Federal* 6516 at 79 & n. 1 (1992

& 1994 Supp.) (same); *United States v. Brown*, 583 F.2d 659, 670 n. 15 (3d Cir.1978) (noting that cross-examination can include "the essential facts of a prior crime"), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979). But *see* M. Graham, *supra*, § 6516 at 91–96 (suggesting limitation).

impeachment purposes, subject to Rule 403. The district court's ruling on the Rule 403 question is subject to review for abuse of discretion,[7] and we find no such abuse here. Accordingly, there was an independent basis for admitting the fact that the defendant's prior conviction was for burglary.

### IV.

**[3]** The defendant next argues that the district court erred in admitting evidence suggesting that a drug transaction was being negotiated just before he allegedly pulled out the revolver and was arrested. The defendant contends that this evidence was not admissible under Fed.R.Evid. 402 and 404(b) and that it should have been excluded under Fed.R.Evid. 403. We disagree.

Evidence tending to show that the defendant was a participant in the selling of drugs was relevant under Rule 402 and was admissible under Rule 404(b) to show that the defendant had a motive for carrying a firearm. Moreover, exclusion of this evidence under Rule 403 was not warranted, since this evidence had significant probative value that was not substantially outweighed by the danger of unfair prejudice.

### V.

**[4]** The defendant maintains that the district court violated due process by giving a jury instruction that diluted the constitutionally required standard of proof beyond a reasonable doubt. The defendant specifically challenges the use of the phrase "moral certainty" in the following portion of the instructions:

Proof beyond a reasonable doubt must, therefore, be of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

A reasonable doubt exists whenever, after a careful and impartial consideration of all

of the evidence in this case or lack of it, you do not feel convinced to a *moral certainty* that the defendant is guilty of the charge.

App. 291 (emphasis added).

Applying the Supreme Court's decision in *Victor v. Nebraska*, — U.S. —, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), we hold that the district court's use of the phrase "moral certainty," although inadvisable, did not violate due process. In *Victor*, the Supreme Court reviewed the convictions of two men, Victor and Sandoval, who had been convicted of murder and sentenced to death in two separate jurisdictions. Both men raised due process challenges to jury instructions on reasonable doubt that used the phrase "moral certainty." In considering these arguments, the Supreme Court first traced the original nineteenth century meaning of the phrase "moral certainty" and concluded that it was essentially the same as proof beyond a reasonable doubt. *Id.* at —, 114 S.Ct. at 1246. The Court recognized that this phrase "is not a mainstay of the modern lexicon," *id.* at —, 114 S.Ct. at 1246, and stated that it did not "condone the use of the ... phrase," *id.* at —, 114 S.Ct. at 1241, but the Court concluded that due process had not been violated in either Victor's or Sandoval's case because the instructions in each case, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury. *See id.* at —, 114 S.Ct. at 1243.

Addressing a contention virtually identical to the one now before us—i.e., that the phrase "moral certainty" would be "understood by modern jurors to mean a standard of proof lower than beyond a reasonable doubt"—the Court pointed to other language in the instructions that should have dispelled such an interpretation. *Id.* at —, 114 S.Ct. at 1247. In Sandoval's case, the Court relied primarily on the statement in the instructions that proof beyond a reasonable doubt

---

7. *See United States v. Provenzano*, 620 F.2d 985, 1003 n. 23 (3d Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *Wilson v. Groaning*, 25 F.2d 583 586 (7th Cir.1994).

**1226**    **44 FEDERAL REPORTER, 3d SERIES**

required an "abiding conviction" in the defendant's guilt. *Id.* at ——, 114 S.Ct. at 1247. In *Victor's* case, the Court relied, not only on this same phrase, *see id.* at ——, 114 S.Ct. at 1250, but also on additional language in the instructions. The Court noted that the instructions equated reasonable doubt with "a doubt that would cause a reasonable person to hesitate to act." *Id.* at ——, ——, 114 S.Ct. at 1250–51. In addition, the Court observed that the jurors had been told that they had to be "convinced of Victor's guilt after full, fair, and impartial consideration of the evidence" and that they should base their decision solely on the evidence introduced at trial. *Id.* at ——, 114 S.Ct. at 1251.

In the present case, we reach the same conclusion as the Supreme Court did in *Victor*, i.e., that the instructions, taken as a whole, adequately conveyed the concept of proof beyond a reasonable doubt and therefore did not violate due process. Here, as in Victor's case, the trial judge equated reasonable doubt with a doubt that would cause a reasonable person to hesitate to act. *See* App. 291. Furthermore, here, as in Victor's case, the trial judge instructed the jurors that they had to be convinced of the defendant's guilt after a careful and impartial consideration of all the evidence and that they should base their decision solely on the evidence presented. *See id.* at 290, 291, 293. While the trial court in this case did not use the phrase "abiding conviction," the court stated that proof beyond a reasonable doubt must be of a "convincing character," stressed the concept of the presumption of innocence, and admonished that "a defendant is never to be convicted on mere suspicion or conjecture." *Id.* at 290–91. Viewing the instructions as a whole, we find them to be similar

to those in Victor's case and to comport with due process.

[5] Our conclusion is not altered by the district court's statement that the jury should acquit the defendant if it viewed the evidence "as reasonably permitting either of two conclusions, one of innocence and the other of guilt." [8] *Id.* at 291. On appeal, the defendant attacks this statement, contending that its implication to lay jurors was that they should acquit only "if there [was] a 50–50 chance of innocence." Appellant's Br. at 37. In the district court, however, the defendant did not specifically object to this language, much less explain the rather subtle argument that he has advanced on appeal, and we certainly do not think that the language at issue, standing alone, constituted plain error. Furthermore, to the extent that the challenged language carries the implication ascribed to it by the defendant, we do not think that the implication is a strong one, and accordingly the inclusion of this language in the instruction does not persuade us that the instructions as a whole are constitutionally deficient.

While we thus find no due process violation in this case, we must make clear that the instructions employed should no longer be given without modification. In light of the Supreme Court's criticism of the phrase "moral certainty," it goes without saying that this antiquated phrase should no longer be used. We also note that the "two-inference" language attacked by the defendant has been criticized by the Second Circuit,[9] and we think that this criticism should be heeded as well when it is specifically brought to the attention of trial judges in future cases.

---

8. Immediately after the portion of the instructions quoted in text, the district court stated: So if you view the evidence in this case as reasonably permitting either of two conclusions, one of innocence and the other of guilt, you should adopt the conclusion of innocence and return a verdict of not guilty, because a defendant is never to be convicted on mere suspicion or conjecture.

   *Id.* at 291. *See* 1 E. Devitt, C. Blackmar, M. Wolff, and K. O'Malley, *Federal Jury Practice and Instructions* § 12.10 at 354 (1992).

9. *See United States v. Inserra,* 34 F.3d 83, 91 (2d Cir.1994) (noting that "the 'two-inference' jury instruction on reasonable doubt was improper"); *United States v. Attanasio,* 870 F.2d 809, 818 (2d Cir.1989); *United States v. Khan,* 821 F.2d 90, 93 (2d Cir.1987). The defendant in this case did not call any of these decisions to the attention of the trial judge or cite them in his appellate brief.

---

[right column, partially cut off]

[6] The def
that the Senten
authority to pro
Criminal" prov
U.S.S.G. § 4B
§ 994(b)(1) and
mission to prom
ries of offenses,"
"the Commission
substantive offen
guidelines for s
utes. *See* Appe
dant maintains
ments 18 U.S.C.
ing enhancemen
*v. Hawkins,* 81
*cert. denied,* 48
L.Ed.2d 69 (198
under which he
invalid. We do

The Sentencin
Commission to
"for each catego
*category of*
§ 994(b)(1) (emp
of the Guideline
ry of defendan
and sets out spe
offense levels an
Thus, in every
provision, togeth
tions of the Gui
case, establishes
relevant offense
and the releva
(armed career o
tion 4B1.4 falls
sion's authority.

For the reaso
the judgment o

MANSMANN

I concur in th
and in its opinic

---

1. In response to
fense counsel m
request, too, wa
prejudicial infor
the court to inf
charged with b
after having rec

## VI.

[6] The defendant's final argument is that the Sentencing Commission lacked the authority to promulgate the "Armed Career Criminal" provision of the Guidelines, U.S.S.G. § 4B1.4. Citing 28 U.S.C. § 994(b)(1) and (c), which authorize the Commission to promulgate guidelines for "categories of offenses," the defendant contends that "the Commission is to establish guidelines for substantive offenses only" and may not issue guidelines for sentencing enhancement statutes. See Appellant's Br. at 42. The defendant maintains that U.S.S.G. § 4B1.4 implements 18 U.S.C. § 924(e), which is a sentencing enhancement provision, see United States v. Hawkins, 811 F.2d 210, 217–20 (3d Cir.), cert. denied, 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987), and that U.S.S.G. § 4B1.4, under which he was sentenced, is therefore invalid. We do not agree.

The Sentencing Reform Act required the Commission to establish a sentencing range "for each category of offense *involving each category of defendant*." 18 U.S.C. § 994(b)(1) (emphasis added). Section 4B1.4 of the Guidelines defines a particular category of defendants, armed career offenders, and sets out special rules for calculating their offense levels and criminal history categories. Thus, in every case in which it applies, this provision, together with whatever other sections of the Guidelines are applicable in that case, establishes a sentencing range for the relevant offense (the offense of conviction) and the relevant category of defendants (armed career offenders). Accordingly, Section 4B1.4 falls squarely within the Commission's authority.

## VII.

For the reasons explained above, we affirm the judgment of the district court.

MANSMANN, Circuit Judge, concurring.

I concur in the judgment of the majority and in its opinion in all respects except one.

I would apply the logic and reasoning of our decision in *United States v. Joshua*, 976 F.2d 844 (3d Cir.1992), to this case and hold that where a trial court finds that the introduction of evidence of a defendant's prior felony conviction would be unduly prejudicial, such evidence may be severed from the trial of the remaining elements of an 18 U.S.C. § 922(g)(1) offense.

In ruling on Jacobs' motion to exclude or limit the evidence pertaining to his prior conviction, the district court found that *Joshua* was not controlling because it addressed severance of counts of an indictment, rather than the severance of elements of an offense, as Jacobs requested here. In addition, the court did not believe that any prejudice to the defendant existed under the circumstances and found that, even if it did, the probative value substantially outweighed the prejudice to the defendant under the circumstances. (App. 87–88.)[1]

Although Jacobs was charged in a single count indictment, I find that the logic and reasoning of *Joshua* is nonetheless applicable here. In *Joshua* we held that in order to prevent prejudicing the jury, a count of a multi-count indictment which charged possession of a gun by a convicted felon could be severed to avoid exposing the jury to the defendant's previous conviction for armed bank robbery. We found that the bifurcated trial procedure adopted by the court struck the appropriate balance between the concern about prejudice to the defendant and considerations of judicial economy. 976 F.2d at 848.

Our overriding concern in *Joshua* was the exposure of the jury to prejudicial information. Specifically, our concern was that the necessity of introducing evidence of the defendant's criminal record, in order to prove the felon in possession of a weapon charge, would prejudice the jury's deliberations on other counts. See also *United States v. Bu-*

---

1. In response to the district court's ruling, defense counsel made an alternative request. This request, too, was designed to limit the impact of prejudicial information. Defense counsel asked the court to inform the jury that "Jacobs was charged with being in possession of a firearm after having received a conviction for a crime punishable by more than a year" (which is the language of the statute), rather than informing the jury that Jacobs had been convicted for burglary. The court denied the request, responding, "I intend ... ly what the indictment charges ... is precise and to the point ..."

**1228**        **44 FEDERAL REPORTER, 3d SERIES**

*sic*, 587 F.2d 577 (3d Cir.), *rev'd on other grounds*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (severance could be granted where evidence of the prior conviction would not be independently admissible with respect to the remaining counts of the indictment).

The potential for the type of prejudice that concerned us in *Joshua* is the same potential for prejudice that exists in this case. Thus, I do not see any reason for distinguishing between a criminal defendant who faces multiple counts of an indictment where one count of the indictment alleges a prior conviction as an element of the offense, and a criminal defendant who is charged in a single count with an offense that has a prior conviction as one of its elements.[2] Here, there was tremendous potential for prejudice to Jacobs from the jury's hearing the evidence regarding Jacobs' prior burglary conviction while it was deciding whether or not Jacobs possessed the firearm. The entire dispute, in this case, concerned whether Jacobs, in fact, possessed the firearm. At trial, police officers George Ciganik and Maurice Jones testified that Jacobs possessed a large revolver which he pulled from his waistband and pointed at the officers. (App. 165–66 and 129–30.) Jacobs took the stand and testified that he did not have a gun. Another witness, June Coleman (an unindicted co-conspirator of Jacobs), testified that Jacobs did not have a gun and that he was wearing a cast on his arm that night. (App. 229–30.) In deciding whether or not Jacobs possessed the firearm, there was absolutely no need for the jury to be informed that Jacobs had a prior criminal record.[3] In resolving this disputed issue of fact, it is possible, and maybe even probable, that the jury was unduly influenced by the

fact that Jacobs had been previously convicted for burglary. Nonetheless, based on the cold record before us, I cannot say that the district court abused its discretion in refusing Jacobs' bifurcation or severance request. The district court is obviously in the best position to decide whether the fact or type of prior conviction would unduly influence a jury in deciding other elements of an offense. It is within the district court's discretion to decide what procedure should be employed, and if any is necessary, to insulate a jury from prejudicial information.

It has always been within the district court's discretion under Federal of Evidence 403 to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Moreover, control over the order of proof at trial is a matter that is committed to the discretion of the trial judge. *United States v. Ammar*, 714 F.2d 238, 246 (3d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *United States v. Continental Group, Inc.*, 603 F.2d 444, 456 (3d Cir.1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). Although 18 U.S.C. § 922(g) requires proof of a prior conviction as an element of this offense, I see no reason why a trial court could not require that the jury determine the issue of possession before being informed that a defendant has a prior conviction. Accordingly, I would extend *Joshua's* application to indictments which allege a prior conviction as an element of the offense.



---

2.  I find the government's argument that the jury needed all the elements of the offense before it prior to deliberating on a single count, to be without merit. Severing the elements of this offense, or adopting a bifurcated trial procedure, is no different from the bifurcation which occurred in *Joshua* where the jury returned verdicts on three counts of the indictment and then returned to render a verdict on the fourth count which charged possession of a firearm by a convicted felon.

3.  Because Jacobs' prior conviction was not relevant to the specific issue of whether Jacobs possessed a revolver on October 22, 1992, *Joshua's* requirement that the evidence of the ‛or con-

viction not be otherwise independently admissible is also satisfied. Indeed, after presentation of the government's case-in-chief, (during which evidence of Jacobs' prior burglary mentioned in the indictment was admitted), the district court granted Jacobs' motion to exclude evidence of his additional prior convictions, finding that the prejudicial value of these prior convictions outweighed their probative value. The court found this evidence had "nothing to do with the issue of whether the defendant possessed a revolver on October 22, 1992" and the court did "not want to impede his [Jacobs'] ability to tell his version of what happened." (App. 223–24.)

UNITED
Ph

COMMONWE
George F. A
monwealth
tary Institu
President of
tute Board
Knapp, Sup
tary Institut
Virginia Mi
dation, Inco
sociation; T
Higher Edu
Officers; T
beth P. Hoi
Q. Marston
Daniel F. F
Jr.; Robert
Woolwine;
liam A. Haz
las K. Baur
on; Glen N
Defendants-

Gordon

The Nationa
American
Women; A
ion; Califo
Center for V
necticut Wc
Fund; Equa
ally Emplo
Majority F
Campaign
for Civil R
Association
National A
for Women;
Women; N
tion; Natio
Force; Nati
en; Nationa
NOW Lega
Fund; Nat
Committee;
Northwest
Lawyers fo